IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY L. KILPATRICK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No.    CIV-10-1063-M |

## FINDINGS & RECOMMENDATION
## OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423, and her application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI on August 29, 2007 alleging a disability since June 1, 2002 (TR. 11). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 11). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on July 24, 2009 (TR. 25-50). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the applications (TR. 27-48). A vocational expert (VE) testified at the request of the ALJ (TR. 46-49). The ALJ issued his decision on September 8, 2009 finding that Plaintiff was not entitled to DIB or SSI (TR. 11-24). The

Appeals Council denied the Plaintiff's request for review on July 29, 2010, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 1-3).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 1, 2002 through her date last insured of June 30, 2003, so the process continued (TR. 13). At step two, the ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease and obesity (TR. 13). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15). At step four, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work (PRW) as a retail sales clerk and

2

insurance sales agent (TR. 23). Thus, at step four of the sequential analysis the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 24).

## ISSUES PRESENTED

On appeal to this Court, Plaintiff alleges that the ALJ erred by failing to properly evaluate the medical evidence; and that the ALJ erred at step four by failing to perform the proper analysis when determining Plaintiff could perform her PRW.

## MEDICAL EVIDENCE

In July 2004, Plaintiff was examined by her treating physician, Chris M. Meyer, M.D., who assessed Plaintiff as having back pain (TR. 202). Dr. Meyer stated that Plaintiff had degenerative changes on her x-rays along with a disc space narrowing (TR. 202). He placed her on ibuprofen for two days and Vioxx for her leg pain (TR. 202). She was told to return if her symptoms worsened or if they did not improve (TR. 202). Plaintiff returned to Dr. Meyer in December 2005 and was prescribed additional medication for her back pain (TR. 200).

In December 2007, Plaintiff underwent a consultative psychiatric evaluation performed by Everett E. Bayne, M.D. (psychiatrist), who observed that Plaintiff was oriented to person, place, date and situation; that her speech was normal; and that there was no evidence of a thought disorder (TR. 205). Dr. Bayne further found that Plaintiff's abstracting abilities measured by proverb interpretation appeared intact; that her cognitive function appeared adequate; and that her judgment appeared acceptable (TR. 206). Dr. Bayne assessed Plaintiff's IQ as being greater than 80, and noted that she was not taking psychiatric medications (TR. 206). He diagnosed her with "Bipolar disorder, NOS, depressed" and found that she was "unemployable" (TR. 206). Dr. Bayne also found that with proper treatment her condition would improve within the next twelve months, and that she was mentally competent to manage funds without assistance (TR. 206).

3

Also in December 2007, Plaintiff underwent a consultative physical examination performed by Dennis R. Whitehouse, D.O. (family medicine), who found that she was alert and oriented; that she had full range of motion of her cervical, thoracic and lumbar spine; and that she also had full range of motion of her shoulders, elbows, wrists, hips, knees and ankles (TR. 207-208). Dr. Whitehouse noted that Plaintiff complained of some numbness along the right side of her leg and some tenderness to palpation of the lumbosacral spine with no changes noted in the musculature (TR. 208). Dr. Whitehouse also found that Plaintiff's upper arm strength and grip strength were within normal limits; that she was able to heel walk and toe walk; and that her gait was stable without assistive devices and "at a very good pace" (TR. 208). Dr. Whitehouse assessed Plaintiff as having chronic low back pain which he felt was "due to the morbid obesity" (TR. 208). He further concluded that Plaintiff had no neurological deficits (TR. 208).

In February 2008, a physical RFC assessment was completed by agency physicians in which they concluded that Plaintiff was able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds; stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; and sit (with normal breaks) for about six hours in an eight-hour workday (TR. 315). Agency physicians also concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 315-318).

In February and May 2008, agency physicians completed a Psychiatric Review Technique (PRT) in which they acknowledged that Plaintiff was alleging bipolar disorder, but they found no medical records before June 30, 2003, Plaintiff's last insured date. Thus, they concluded that there was insufficient evidence to support the existence of a mental impairment during the relevant period (TR. 334, 322).

In October 2008 Plaintiff was examined by Ahmed Amayem, M.D., who reported that Plaintiff's range of motion in her spine and extremities was within normal limits except for tenderness and spasm over her paraspinal area of her lower lumber spine and tenderness over

4

her buttocks and the back of her thighs (TR. 395). Dr. Amayem also observed that Plaintiff had "Painful limited last degree of ROM of the lumbar spine due to stiffness and pain"; and that her sensory and motor systems were within normal limits (TR. 395). In November 2008, Plaintiff received lumbar steroid injections at L4-5 from Dr. Amayem (TR. 359-363). Dr. Amayem's post-operative diagnosis was of lumbar degenerative disc disease with significant sensory radiculopathy of lower extremities and lumbar spondylosis (TR. 360).

In April, May and June 2009, Plaintiff was examined by her treating physician, Harvey Jenkins, Ph.D., M.D., who found that she had "moderate spasm"; that she was "grossly neurologically intact"; and that his impression was of "Intravertebral disc disorder, lumbar spine" (TR. 369, 371, 373). Also in June 2009, Dr. Jenkins completed a medical source statement in which he found that Plaintiff was limited to occasionally lifting less than ten pounds; and that she could stand and/or walk or sit for less than one hour in a typical eight hour workday (TR. 365). Dr. Jenkins also found that Plaintiff was required to lie down during the normal workday to manage her pain or other symptoms; and that she was limited in her ability to push and/or pull (TR. 366). Dr. Jenkins further found that Plaintiff could never climb, kneel, crouch, crawl or reach; and that she could only occasionally balance, stoop, handle, finger or feel (TR. 366). Dr. Jenkins supported these restrictions by stating only that Plaintiff had "Degenerative changes at L3-4 through L5-S1" (TR. 366). Dr. Jenkins medical statement purported to cover "2002 to present" (TR. 366).

## ANALYSIS

### I. The ALJ's Evaluation of the Medical Evidence.

Plaintiff argues that the ALJ failed to properly analyze the opinions of her treating physician, Dr. Jenkins, as stated in his medical source statement of June 2009 (TR. 365 -366) (See Plaintiff's Brief at pages 3-9).

When presented with opinions of a treating physician, the ALJ must "give good reasons" in his decision for the weight assigned to the opinion. 20 C.F.R. § 404.1527(d)(2) *see also* SSR 96-2p; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p; 20 C.F.R. §404.1527(d)(2).

The Tenth Circuit described the required analysis of a treating physician's opinion in *Watkins v. Barnhart*, 350 F. 3d 1297, 1300-1301, (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

The Court in *Watkins* further reasoned that

> Resolving the controlling weight issue does not end our review. In completing the analysis: adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927

6

*Watkins* at 1300; SSR 96-2p.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight then in order to disregard or give "slight weight" to that treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In his decision the ALJ provided a detailed and thorough review of the medical evidence. He also provided specific legitimate reasons for giving "no weight" to the opinions of Plaintiff's treating physician, Dr. Jenkins (TR. 21). In evaluating the opinion of Dr. Jenkins that Plaintiff's back pain prevented her "from the performance of even sedentary work", the ALJ correctly observed that Dr. Jenkins

> Indicated that his opinion covered the period of time from 2002 to the present. Yet according to his own treatment records, he did not start treating claimant until September 23, 2008 (a period of less than one year total), thus, length of treatment is lacking. He had no way of knowing claimant's condition between 2002 and 2008. Dr. Jenkins saw claimant routinely on a monthly basis and he is an orthopedist, thus, specialization and frequently [sic] of examinations are met. However, consistency of his opinion and degree of relevant evidence supporting his opinion are lacking. According to his own treatment records, physical examinations consistently demonstrated only "moderate spasm" with grossly neurologically intact functioning. Dr. Jenkins did refer claimant for epidural steroid injections, and he noted afterward that the injections helped claimant's back pain. He also noted that claimant's

7

> medications (Lortab, Zanaflex, and Lodine) helped with claimant's pain. Dr. Jenkins did not refer claimant to physical therapy or treatment at a pain management clinic, although he did refer claimant for surgical evaluation; however, claimant admitted at the hearing that surgery had not been recommended. There is no evidence that claimant's pain has not been adequately controlled with routine use of her medications

(TR. 21).

Accordingly, the ALJ properly concluded that the opinions of Dr. Jenkins should be given "no weight" because it was not well supported by his own treatment notes or by the medical evidence as a whole (TR. 21). The ALJ's decision provides specific, legitimate reasons for his rejection of Dr. Jenkins' opinions. *Watkins* at 1301.

Plaintiff also argues that the ALJ erred by not recontacting Dr. Jenkins (See Plaintiff's Brief at page 10). The Commissioner, under the governing regulations, must recontact a treating physician when the information the doctor provides is "inadequate ... to determine whether you [the claimant] are disabled." 20 C.F.R. § 404.1512(e). Plaintiff fails to show how the record is inadequate and contends only that an ambiguity exists as to whether Plaintiff's impairments were disabling before the date last insured.

Plaintiff's argument lacks merit because the record is complete and adequate for an administrative determination. The ALJ believed the information he received from Dr. Jenkins was adequate for consideration; that is, it was not so incomplete that it could not be considered. *White v. Barnhart*, 287 F.3d 903, 908-909 (10th Cir. 2001) (court declined to remand when record is adequate for ALJ's consideration: rejection of a physician's opinion does not trigger duty to re-contact). Thus, it appears that the ALJ did not err in failing to re-contact Dr. Jenkins.

Plaintiff argues the ALJ improperly disregarded the opinion of the consultative psychiatric examiner, Dr. Bayne, that Plaintiff was "unemployable" (TR. 206) (See Plaintiff's Brief at pages 12-13). In addressing this opinion of Dr. Bayne, the ALJ correctly observed that Dr. Bayne was not a treating psychiatrist; that he provided a "one-time only examination"; and that his "very

pessimistic opinion was not even supported by his own examination report…" (TR. 22). Thus, Dr. Bayne's opinion was properly rejected by the ALJ as inconsistent with the examiner's own findings and as being given on the ultimate issue of disability which is a determination reserved to the Commissioner (TR. 22). 20 C.F.R. §§404.1527(e)(3), 416.927(e)(3).

Plaintiff also argues that the ALJ erred in failing to find that Plaintiff's bipolar disorder was a severe impairment at step two (See Plaintiff's Brief at pages 11-13). Step two of the Sequential Evaluation Process, is governed by the Secretary's "severity regulation." *Bowen v. Yuckert*, 482 U.S. 137,140-41 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The "severity regulation" provides that:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Secretary] will find that you do not have a severe impairment and are, therefore, not disabled. [The Secretary] will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). Pursuant to this regulation, claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." *Williams*, 844 F.2d at 751. This threshold determination is to be based on medical factors alone. Vocational factors, such as age, education, and work experience, are not to be considered. *Bowen*, 482 U.S. at 153; *Williams*, 844 F.2d at 750. The mere presence of a condition, by itself, does not meet the burden of proof at step two; instead, the severity of an impairment is measured by its impact on the claimant's ability to work. *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(b). These abilities and aptitudes include the following:

> (1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2)   Capacities for seeing, hearing, and speaking;

> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of Judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine setting.

20 C.F.R. § 404.1521(b).

Plaintiff's burden on the severity issue is *de minimis*. *Williams*, 844 F.2d at 751. As the United States Supreme Court explains, the Secretary's severity regulation

> increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are **so slight** that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.

*Bowen*, 482 U.S. at 153 (emphasis added). The Secretary's own regulations state that

> [g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

Social Security Ruling 85-28 (1985). In other words, step two "is an administrative convenience [used] to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) (quoting *Farris v. Secretary of HHS*, 773 F.2d 85, 89 n. 1 (6th Cir. 1985)).

The record fails to show that Plaintiff sought or received ongoing psychiatric treatment for bipolar disorder (TR. 205). Although Plaintiff had been prescribed psychiatric medication, she stated that she had not "been on any of these medications for about ten years (TR. 205). Thus, the ALJ correctly observed that Plaintiff failed to meet his *de minimis* burden of showing her bipolar disorder was a severe impairment.

Thus, it appears that the ALJ did not err in his analysis of the medical evidence.

10

## II.     The ALJ's Step Four Analysis.

Plaintiff alleges that the ALJ erred by failing to conduct a proper analysis at step four (See Plaintiff's Brief at pages 13-16). At step four, Social Security Regulation 82-62 requires an ALJ to develop the record with respect to a claimant's PRW.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.
> . . . .
> [D]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

Soc. Sec. Rep. Serv., Rulings 1975-1982, SSR 82-62 (West 1982). The ALJ must make specific factual findings detailing how the requirements of claimant's PRW fit the claimant's current limitations. The ALJ's findings must contain:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62; *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994); *Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993).

Here, the ALJ found that Plaintiff had the RFC to perform a wide range of light work, subject to certain limitations (TR. 16). The ALJ's RFC assessment is supported by substantial evidence. Plaintiff claims that the ALJ erred by not making specific findings regarding specific demands of her PRW as a retail sales clerk and insurance sales agent (See Plaintiff's Brief at page 14). As to Plaintiff's PRW the ALJ found

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work [retail sales clerk and insurance sales agent], the undersigned finds the claimant is able to perform her past relevant work as actually and generally performed

(TR. 24). In addition to the testimony of the VE the ALJ relied upon the work history provided by the Plaintiff (TR. 46-48, 153-160). The ALJ stated that he considered all evidence in the record and the record contains substantial evidence of the physical demands of Plaintiff's PRW (TR. 11). The ALJ was not required to specify the mental demands of Plaintiff's PRW because he found Plaintiff's mental impairment to be non-severe (TR. 14).

In support of his position, Plaintiff cites *Winfrey v. Chater* 92 F.3d 1017 (10th Cir. 1996). While instructive on the responsibilities of an ALJ at step four, the undersigned finds that *Winfrey* is not dispositive. In *Winfrey* the ALJ failed to include all of Plaintiff's exertional limitations in his RFC finding and failed to develop the record on, and to make the required findings about, the mental demands of Plaintiff's PRW. *Winfrey* at 1025. This failure infected the third phase, where the ALJ abdicated his fact finding and evaluation responsibilities to the VE. *Winfrey* at 1025. In the present case, the ALJ included in the RFC all of Plaintiff's limitations which were supported by substantial evidence, and made all of the necessary findings to support his step four analysis (TR. 16, 23-24). In accordance with *Winfrey* the ALJ himself made the required findings on the record, including his own evaluation of the claimant's ability to perform her PRW (TR. 23-24). SSR 82-62; *Winfrey* at 1025.

The ALJ's reliance on the testimony of the VE was proper only because his questions to the VE included all of the limitations established by substantial evidence and because the ALJ made his own specific findings (TR. 48, 24). While the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his PRW. SSR 82-62; *Winfrey* at 1025. It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the VE, because in such cases, "the remainder of the step four assessment takes

place in the VE's head" and "we are left with nothing to review." *Winfrey* at 1025.

In this case the ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of his step four analysis (TR. 24). An "ALJ may rely on information supplied by the VE at step four." *Winfrey* at 1025. The ALJ's findings were adequate here to satisfy the step four requirements articulated in *Winfrey*. *See Doyle v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003).

Lastly, Plaintiff argues that her work as a retail sales clerk does not qualify as PRW because she performed it for six months in 2002, yet her earnings record indicates that she earned only $1,256.14 which is below the substantial gainful activity threshold (See Plaintiff's Brief at page 16) (TR. 137). 20 C.F.R. § 404.1574. Plaintiff appears correct in her assertion however, there is no error requiring remand because substantial evidence supports the ALJ's finding that Plaintiff continues to be able to perform her PRW as an insurance sales agent.

Thus, it appears that the ALJ's step four analysis and his determination that Plaintiff was capable of performing her PRW as an insurance sales agent is supported by substantial evidence.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **December 12, 2011**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the

right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 21st day of November 2011.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE